IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

GILLSON CAPITAL LP,

    Plaintiff,

v.                                                    Case No.

BRIAN CONN,

    Defendant.

## PLAINTIFF GILLSON CAPITAL LP'S COMPLAINT

Plaintiff GILLSON CAPITAL LP ("Gillson" or the "Company") brings this Complaint seeking damages and other relief against its former employee, Defendant BRIAN CONN ("Conn"). Conn breached the terms of an agreement with Gillson by refusing to repay a $1.166 million discretionary bonus he owed to the Company because he resigned within six months of receiving that bonus; as a result, Gillson has sustained damages. Gillson also seeks a declaration that the non-solicitation agreement between Conn and the Company is enforceable. Gillson alleges as follows:

### Parties

1.      Gillson is a Delaware limited partnership with its headquarters and principal place of business located at 222 West Adams Street, Chicago, Illinois 60606. Gillson also employs remote employees in Florida, Michigan and New York.

2.      Brian Conn is an individual who, on information and belief, resides in Jupiter, Florida 33477. Conn is a former employee of Gillson, who worked for the Company remotely out of his Florida residence.

## Jurisdiction and Venue

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. Gillson is a Delaware limited partnership whose principal place of business is located in Illinois. Conn is a citizen of Florida. The matter in controversy in this action exceeds $75,000, exclusive of interest and costs.

4. Venue in this Court is proper under 28 U.S.C. § 1391 because this judicial district is where a substantial part of the events giving rise to the claim occurred.

## Gillson's Business

5. Gillson is a hedge fund management firm which provides portfolio management for pooled investment vehicles. As a hedge fund management firm, Gillson works with high net worth clients to achieve superior risk-adjusted total returns by employing a fundamentally driven, market neutral, factor constrained long/short equity strategy focused on the global financial services sector.

6. The hedge fund management industry is highly reliant on client relationships. Accordingly, due to the nature of its business, Gillson has a legitimate and important business interest in its relationships with its clients. Gillson's client relationships were created and strengthened through great capital and human investment, and Gillson's success is based, in substantial part, on confidential information developed and used by Gillson, as well as confidential information not disclosed to the general public or to Gillson's competitors.

7. Gillson views and treats as confidential any knowledge or information of a confidential nature relating to the business of the Company or any of its parents, subsidiaries, or affiliates, and of their respective clients, including, without limitation, all types of trade secrets, client lists or information, employee lists or information, information regarding product

development, marking plans, management organization information, operating policies or manuals, business plans, performance results, financial records, packaging design, data and information relating to the Company's investments, operations and overall business, names of investors, or other financial, commercial, business, or technical information.

8. Gillson takes significant measures to prevent the disclosure of its confidential information to competitors and other third parties. For example, Gillson maintains a Confidential Information Policy in its *Employee Handbook*, which prohibits employees from disclosing confidential information in any manner, whether in writing, electronically or verbally, to any other entity or person, unless authorized by the Company's Chief Compliance Officer. Moreover, the Company maintains its Confidentiality of Information Policy in its *Compliance Manual*, which provides procedures to safeguard client and investor information and sets forth rules regarding the protection of Gillson's and its clients' proprietary information.

### Conn's Employment with Gillson

9. On July 2020, Gillson extended an offer of employment to Conn for the position of Head of Bank and Diversified Financials, to be performed remotely from Florida. Conn's first day of employment with the Company was July 21, 2020.

10. In this capacity, Conn was primarily responsible for managing a portion of the Company's assets dedicated to the bank sector. In his role, Conn regularly interacted with, and became intimately familiar with, the Company's clients with whom or upon which he called. Thus, Conn was entrusted with and had access to Gillson's confidential information, including, but not limited to, information regarding the identities, characteristics and preferences of the clients of the Company, information regarding the Company's business operations and financial information,

and other financial, commercial, business, or technical information. Conn was entrusted with this confidential information to create and strengthen client relationships for Gillson's benefit.

11. Upon his hire, Conn began receiving an annual base salary of $225,000.00.

12. As Head of Bank and Diversified Financials, Conn was eligible to participate in the Company's bonus programs and benefits programs. Of particular relevance here, the Company agreed to provide Conn with certain additional, discretionary compensation. First, the Company agreed to pay to Conn a discretionary management fee distribution bonus in the amount of $1,166,293.00 (the "Discretionary Management Fee Distribution Bonus"), pursuant to the terms contained in a Management Fee Distribution Bonus Award Agreement dated March 31, 2023 and signed by Conn on April 8, 2023 (the "Management Bonus Agreement"). A true and correct copy of the Management Bonus Agreement is attached as Exhibit A. Second, the Company agreed to pay to Conn a discretionary bonus of $25,000.00 (the "Discretionary Mid-Year Bonus"), pursuant to the terms contained in a June 14, 2023 agreement signed by Conn on June 16, 2023 (the "Mid-Year Award Agreement"). A true and correct copy of the Mid-Year Award Agreement is attached as Exhibit B.

## The Management Bonus Agreement

13. The Management Bonus Agreement provides as follows regarding Conn's obligation to repay Gillson the Discretionary Management Fee Distribution Bonus:

> [I]n the event that you resign within six months from the anniversary date of this Agreement, you shall repay to the Company the gross amount of the Bonus within ten (10) days of your last day of employment. In the event that you resign after six months of the anniversary date of this Agreement, but before the one-year anniversary of this Agreement, you shall repay to the Company 50% of the gross amount of the Bonus within ten (10) days of your last employment.
>
> [I]f your employment with the Company is terminated for 'Cause' … prior to the one-year anniversary of the date of this Agreement, you shall repay

> to the Company the gross amount of the Bonus within ten (10) days of your last day of employment.

(Ex. A, p. 1).

14.   The purpose of the Discretionary Management Fee Distribution Bonus was to incentivize Conn to remain employed by the Company as a successful contributor.  The Company pays other employees discretionary management fee distribution bonuses – and, in every instance, the Founder and Portfolio Manager of Gillson, Dan Johnson, retains the complete and ultimate discretion regarding the amounts, if any, to be paid to any eligible employee.

15.   Conn executed the Management Bonus Agreement on April 8, 2023, thereby acknowledging the Management Bonus Agreement's "terms and consequences," including with regard to his repayment obligations.  (*Id*. at p. 2).

16.   On information and belief, Conn digitally signed the Management Bonus Agreement in the state of Florida and returned the signed Management Bonus Agreement to Gillson via email, sent from the state of Florida.

17.   On April 12, 2023, Gillson paid Conn the Discretionary Management Fee Distribution Bonus in the amount of $1,166,293.00.

18.   At all times relevant hereto, Conn understood that if his employment with Gillson ended within six (6) months of the Company's payment of the Discretionary Management Fee Distribution Bonus, he would be responsible for returning the entirety of the Discretionary Management Fee Distribution Bonus to the Company.

19.   Gillson would not have paid Conn the Discretionary Management Fee Distribution Bonus but for Conn's agreement to abide by and be bound by the terms of the Management Bonus Agreement.

**The Mid-Year Award Agreement**

20. In June 2023, Gillson offered Conn a Discretionary Mid-Year Bonus in the amount of $25,000.00. (*See* Ex. B, p. 1.) Conn's receipt of the Discretionary Mid-Year Bonus was contingent upon his execution of the Mid-Year Award Agreement, which contains confidentiality, client and employee non-solicitation, and non-disparagement provisions.

21. In the Mid-Year Award Agreement, Conn recognized and acknowledged that by virtue of his employment with Gillson, he "may gain or ha[s] gained knowledge of the identity, characteristics and preferences of the Company and its affiliates" and that he "would inevitably have to draw on" such information "and on other Confidential Information … if [he] were to solicit or service the Company's clients on behalf of a competing business enterprise." (*Id*. at p. 2.)

22. Accordingly, the Mid-Year Award Agreement contains a non-solicitation provision (the "non-solicitation agreement") which prohibits Conn from soliciting Gillson's clients or employees or otherwise conducting competitive business with them for the eighteen (18) month period following his separation of employment from Gillson. Specifically, Conn agreed that he would not, directly or indirectly:

> solicit the business of or perform any services for (i) any person or entity that is a client as of the last day of [Conn's] employment … (ii) any person or entity that has been a client within the twelve (12) months preceding the Termination Date, or (iii) any prospective client the Company has actively solicited within the twelve (12) months preceding the Termination Date…. [or] hire or seek to hire (whether on [his] own behalf or on behalf of some other person or entity) any person who is, as of the Termination Date, an employee of the Company or who had left the employ of the Company within eighteen (18) months prior to the Termination Date [or] directly or indirectly encourage or induce any employee of the Company to leave … the Company's employ.

(*Id.* at pp. 2-3.)

23. The non-solicitation agreement explicitly excludes clients of the Company with which or whom Conn "had no interactions with during [his] employment with the Company and received no confidential information" concerning such client and clients which or whom Conn "serviced prior to [his] employment with the Company and which were introduced to the Company by [him]." (*Id.* at p. 2.)

24. The primary purpose of the non-solicitation agreement is to reasonably protect Gillson's legitimate business interests, including the retention of Gillson's current clients and employees; the preservation of Gillson's confidential information, including information used to assist in the retention of Gillson's current clients, expand business with its current clients, and secure prospective clients; and the protection of the goodwill Gillson has created with its current and prospective clients.

25. On June 16, 2023, Conn signed the Mid-Year Award Agreement, and Gillson paid Conn the Mid-Year Discretionary Bonus on June 23, 2023.

26. On information and belief, Conn digitally signed the Mid-Year Award Agreement in the state of Florida and returned the signed Mid-Year Award Agreement to Gillson via email, sent from the state of Florida.

27. Gillson would not have paid Conn the Mid-Year Discretionary Bonus but for his agreement to abide and be bound by the terms of the Mid-Year Award Agreement, specifically including the non-solicitation agreement.

**Conn's Resignation and Refusal to Comply with His Contractual Obligations**

28.     On July 17, 2023, Conn informed Gillson that he was resigning his employment with Gillson, effective August 25, 2023, *i.e.*, just over one month short of six months from the effective date of the Management Bonus Agreement.

29.     Accordingly, on August 25, 2023, Gillson wrote to Conn to remind him of his contractual repayment obligations under the Management Bonus Agreement and his post-employment obligations under the Mid-Year Award Agreement. A true and correct copy of Gillson's August 25, 2023 correspondence is attached as Exhibit C.

30.     To date, Conn has entirely refused to repay the Discretionary Management Distribution Fee Bonus to Gillson.

31.     Moreover, on information and belief, Conn contends that he is permitted to take actions that violate the non-solicitation agreement set forth in the Mid-Year Award Agreement.

32.     On information and belief, Conn has accepted employment at Freestone Grove, one of Gillson's direct competitors.

**COUNT I**
**(Breach of Contract – The Management Bonus Agreement)**

33.     Gillson realleges Paragraphs 1 through 32 as though these Paragraphs were set forth fully herein.

34.     On or about April 8, 2023, Conn and Gillson entered into a valid and enforceable contract. (*See* Ex. A.) The Management Bonus Agreement provided that Gillson would pay Conn a Discretionary Management Fee Distribution Bonus Award in the amount of $1,166,293.00. Further, the Management Bonus Agreement required Conn to repay the entirety of the Discretionary Management Fee Distribution Bonus if his employment with Gillson ended,

voluntarily or involuntarily, within six (6) months of Conn's execution of the Management Bonus Agreement.

35. Gillson has performed all of its obligations under the Management Bonus Agreement.

36. Conn has breached the terms of the Management Bonus Agreement by refusing to repay the Discretionary Management Fee Distribution Bonus.

37. As a direct result of Conn's breach of the terms set forth in the Management Bonus Agreement, Gillson has sustained damages in an amount not less than $1,166,293.00. Further, Gillson has and will continue to incur costs and fees in attempting to recover from Conn the Discretionary Management Distribution Fee Bonus, including without limitation court costs and attorneys' fees.

WHEREFORE, Gillson Capital LP respectfully requests that this Court enter judgment in its favor and against Brian Conn and enter an order:

(a) ordering Conn to pay Gillson its damages, together with pre-judgment interest, in an amount not less than $1,166,293.00;

(b) ordering Conn to reimburse Gillson for its costs and attorneys' fees incurred in connection with attempting to recover the Discretionary Management Distribution Fee Bonus; and

(c) granting Gillson any such other and further relief that this Court deems just and proper.

## COUNT II
### Unjust Enrichment
**(In the Alternative to Count I)**

38. Gillson realleges Paragraphs 1 through 11, Paragraph 14, Paragraphs 17 through 18, Paragraph 28, and Paragraphs 30 through 32 as though these Paragraphs were set forth fully herein.

39. Gillson pleads this Count II in the alternative to Count I.

40. Following his resignation from Gillson, Conn has unfairly asserted control over $1,166,293.00 of the Company's funds.

41. Gillson has sought to recover the Discretionary Management Fee Distribution Bonus, but to date, Conn has refused to comply with Gillson's demand.

42. Conn has unjustly retained the Discretionary Management Fee Distribution Bonus for his own benefit and to the Company's detriment.

43. Conn's retention of the Discretionary Management Fee Distribution Bonus violates fundamental principles of justice, equity, and good conscience.

44. Conn's conduct has been willful and malicious in that he intentionally has retained Gillson's funds and rejected Gillson's demand to repay such funds.

45. As a result, Gillson has sustained damages in an amount not less than $1,166,293.00.  Further, Gillson has and will continue to incur costs and fees in attempting to recover the Discretionary Management Fee Distribution Bonus from Conn, including without limitation court costs and attorneys' fees.

WHEREFORE, Gillson Capital LP respectfully requests that this Court enter judgment in its favor and against Brian Conn and enter an order:

(a) ordering Conn to pay Gillson its damages, together with pre-judgment interest, in an amount not less than $1,166,293.00;

(b) ordering Conn to reimburse Gillson for its costs and attorneys' fees incurred in connection with attempting to recover the Discretionary Management Fee Distribution Bonus; and

(c) granting Gillson any such other and further relief that this Court deems just and proper.

## COUNT III
### Declaratory Judgment

46. Gillson realleges Paragraphs 1 through 32 as though these Paragraphs were set forth fully herein.

47. Gillson brings this action for declaratory relief pursuant to 28 U.S.C. § 2201.

48. On or about June 16, 2023, Conn and Gillson entered into the Mid-Year Award Agreement.

49. The non-solicitation agreement, as set forth in the Mid-Year Award Agreement, is valid and enforceable under applicable law, as it is narrowly tailored, in both temporal and geographic scope, to protect Gillson's legitimate business interests.

50. As set forth above, the non-solicitation agreement serves to protect Gillson's legitimate business interests, including, but not limited to, the retention of Gillson's current clients and employees; the preservation of Gillson's confidential information, including information used to assist in the retention of Gillson's current clients, expand business with its current clients, and secure prospective clients; and the protection of the goodwill Gillson has created with its current and prospective future clients.

51. Additionally, the temporal and geographic restrictions set forth in the non-solicitation agreement are reasonable. The duration is limited to eighteen (18) months, a time period tailored to prevent Conn's competitive use of the confidential information he gained from his employment with Gillson. Likewise, where, as here, the non-solicitation agreement is limited to clients with whom the employee had a relationship prior to his departure, a territorial restriction is unnecessary. (*See* Ex. B at p. 2 (excluding from the non-solicitation agreement clients with whom or which Conn had no interaction with during his employment, clients about whom or which

Conn did not obtain any confidential information, and clients serviced by Conn prior to the commencement of his employment with the Company).)

52. Gillson is informed and believes, and based thereon alleges, that Conn contends that he is permitted to take actions that violate the non-solicitation agreement set forth in the Mid-Year Award Agreement.

53. An actual controversy has arisen and now exists between Conn and Gillson regarding the legal validity and enforceability of the non-solicitation agreement.

54. Moreover, there is a bona fide, actual, present, and practical need for a declaration that, for eighteen (18) months, Conn is not permitted as a matter of law to: (i) solicit, entice, accept work involving, or otherwise interfere with the relationship of any client, prospective client, or employee of Gillson; or (ii) contact any client of the Company's, directly or indirectly, in any manner, including, but not limited to, via phone, email, or message.

55. Gillson seeks a judicial determination of the enforceability of the non-solicitation agreement contained in the Mid-Year Award Agreement, and a declaration that the non-solicitation agreement is enforceable and binding.

56. A judicial declaration is necessary and appropriate at this time because an actual dispute exists between the parties as to the enforceability of the non-solicitation agreement.

57. As a result of Conn's threatened actions, Gillson is currently being, and will continue to be, damaged and irreparably harmed. Gillson requires this relief in order to prevent any further damage or harm.

WHEREFORE, Gillson Capital LP respectfully requests that this Court:

(a)  declare that the non-solicitation provision contained in the Mid-Year Award Agreement is fully enforceable under applicable law;

(b)      enter an order requiring Conn to reimburse Gillson for its costs and attorneys' fees incurred in connection with attempting to prove the enforceability of the non-solicitation agreement; and

(c)      enter an order granting Gillson any such other and further relief that this Court deems just and proper.

Dated: October 4, 2023                                      Respectfully Submitted,

                                                                          **GILLSON CAPITAL LP**

                                                                          By:    */s/ Tania Cruz*
                                                                                     One of Its Attorneys

Tania Cruz (Bar No. 899151)
Ira J. Gonzalez (Bar No. 92408)
**McCARTER & ENGLISH, LLP**
2525 Ponce de Leon Blvd., Ste. 300
Coral Gables, FL 33134
Telephone: (786) 385-7372
Facsimile: (786) 325-5956
tcruz@mccarter.com
igonzalez@mccarter.com

Sonya Rosenberg (*pro hac vice* pending)
Tonya G. Newman (*pro hac vice* pending)
Kathleen E. Okon (*pro hac vice* pending)
**NEAL, GERBER & EISENBERG LLP**
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602-3801
Telephone: (312) 269-8000
Facsimile: (312) 269-1747
srosenberg@nge.com
tnewman@nge.com
kokon@nge.com

35671078.8